ROBERT Y. WENDELL et al., Administrators, etc., Respondents, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Although from an infant, if *sui juris*, a less degree of care is required than from a person of mature age, yet he is chargeable with some degree of care and prudence in approaching a known danger, and is responsible for the consequences of some degree of negligence ; and in an action for injuries to him occasioned by negligence of another, absence of this degree

of negligence on his part must be made to appear to authorize a recovery.

In an action to recover damages for alleged negligence causing the death of W., plaintiffs' intestate, who was killed at a crossing on the defendant's road, in the city of S., it appeared that the deceased was a bright, active boy seven years of age, considered competent by his parents to go to school and on errands alone. He was in the habit of crossing the railroad tracks at the place where the accident happened; he had been stopped while attempting to cross by the flagmen stationed at that point, and had been before cautioned by them against attempting to cross in front of an approaching train. Shortly before the accident the deceased was standing near the flagman's shanty with a companion, on the street fifty-one feet from where he was struck; the approaching train was in plain sight from the place where he stood for a distance of about five hundred feet from the crossing. The flagmen (two in number) had left the shanty and approached the track, in the performance of their duty. The boys both started on a run to cross in front of the train; the flagmen shouted to them to stop and waved their flags; one of the flagmen, who stood on the sidewalk ten or fifteen feet distant from the track on which the train was approaching, endeavored to intercept the deceased, but he eluded him and reached the track, where he slipped and fell and was killed. *Held* (DANFORTH, J., dissenting), that a motion for nonsuit on the ground of contributory negligence was improperly denied.

(Argued January 29, 1883 ; decided March 6, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 27, 1882, which affirmed a judgment in favor of plaintiffs, entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*Hamilton Harris* for appellant. The jury must be authorized to find affirmatively that the person injured was free from fault which contributed to the accident, or the action cannot be maintained. (*Reynolds* v. *N. Y. C. & H. R. R. R.*, 58 N.Y. 248; *Weber* v. *N. Y. C. & H. R. R. R.*, id. 451; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; Thompson on Neg. 1236; *Rudolph* v. *Fuchs*, 44 How. Pr. 160.) The law does not require of an infant of tender years the same degree of care as is re-

quired from an adult, and the degree of care required is to be graduated by the age and capacity of the individual, but this does not change the well-settled rule as to contributory negligence. (*Byrne Case*, 83 N. Y. 622; *Sheridan Case*, 36 id. 43; *McGovern Case*, 67 id. 417; *Thurber Case*, 60 id. 326.) The refusal of the request to charge, that there was no proof to warrant the jury in finding that the deceased did not know the danger of crossing the track in front of the locomotive, was error. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330.) The defendant was free from any negligence contributory to the injury. (*McGrath Case*, 63 N. Y. 528; *Salter Case*, 88 id. 56; *Knupfke* v. *Knick. Ice Co.*, 84 id. 488; *Calligen Case*, 59 id. 651.) The court erred in charging that "the rights of the persons who may traverse that street and the rights of the railroad company which runs its trains there, are to be exercised together in a proper and reasonable manner;" and again, "you must not give undue prominence to the rights of citizens as against the railroad company, nor to the rights of the railroad company as against the citizens." (*Adolph Case*, 76 N. Y. 534.)

*Arthur A. Yates* for respondents. The high rate of speed at which defendant was running at the crossing was negligent, although every statutory signal was given. (*Costello's Case*, 65 Barb. 92; *Wilds* v. *Hudson River R. R. Co.*, 21 N. Y. 315; *McGovern* v. *N. Y. C. & H. R. R. R. Co.*, 67 id. 417, 420, 421; *Grippin* v. *N. Y. C. & H. R. R. R. Co.*, 40 id. 34.) Persons of "ordinary experience" and not experts alone may testify as to speed of trains. (*Salter* v. *U. & B. R. R. R. Co.*, 59 N. Y. 631; *Nearing* v. *N. Y. C. R. R.*, Gen. Term, third dept., 12 Weekly Dig. No. 9, p. 205; *McGrath* v. *N. Y. C. R. R. Co.*, 65 N. Y. 330; *Massoit* v. *N. Y. C. & H. R. R. R. R. Co.*, 64 id. 424; *Jetter* v. *N. Y. C. & H. R. R. R. Co.*, 2 Abb. Ct. of App. 458.) There was no negligence on the part of the deceased which contributed to his death. (*Hawks* v. *Winans*, 10 J. & S. 451; *Costello's Case*, 65 Barb. 92; *Thurber* v. *H. B. M. & F. R. R. R.*, 60 N. Y. 33; *Belton* v. *Baxter*, 58 id. 411;

3 Abb. Ct. of App. 274; *Baxter* v. *Second Ave. R. R. Co.*, 3 Robt. 310; *Aaron* v. *Second Ave. R. R. Co.*, 2 Daly, 127.) Negligence cannot be imputed to the parent of the child, or those having him in charge. (*Drew* v. *Sixth Ave. R. R. Co.*, 26 N. Y. 49; *Thurber* v. *H. B. M. & H. R. R. Co.*, 60 id. 333, 335; *Mangam* v. *N. Y. C.*, etc., 39 id. 455, 459; 41 Eng. Com. Law, 422; *McGovern's Case*, 67 N. Y. 421.) To justify a nonsuit on the ground of contributory negligence the undisputed facts must show the omission or commission of some act which the law adjudges negligence. (*Stackus* v. *N. Y. C.*, etc., 79 N. Y. 464; *Chadbourne* v. *D. L. & W. R. R. Co.*, 6 Daly, 215.) An infant is not held to the same degree of care to which an adult should be held. (*Ihl* v. *Forty-second St. R. R. Co.*, 47 N. Y. 317; *Sheridan* v. *B. & N. R. R. Co.*, 36 id. 42; *O'Mara* v. *H. R. R. R. Co.*, 38 id. 444; *Costello's Case*, 65 Barb. 92; *Mowry* v. *Cent. City R. R. Co.*, 51 N. Y. 666; *Reynolds* v. *N. Y. C.*, etc., 58 id. 252; *McGarry* v. *Loomis*, 69 id. 107; *Fallon* v. *Cent. Park N. E. R. R.*, 64 id. 13; *McGovern's Case*, 67 id. 517; *Haycroft* v. *L. S. & M. S.*, 3 Hun, 191; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 518; *Byrnes* v. *N. Y. C.*, 83 id. 620; *Mangam* v. *B. R. R. Co.*, 38 id. 455, 458; *Lynch* v. *Mandin*, 42 Eng. Com. Law, 422; *Dowling* v. *N. Y. C. R. R.*, 15 Week. Dig. 471; *Powell* v. *N. Y. C.*, 22 Hun, 56; *Thurber* v. *H. B. M. & T. R. R. Co.*, 60 N. Y. 334, 335; *McGovern* v. *N. Y. C.*, 67 id. 417.) The whole question of negligence belongs to the jury. (*Hart* v. *Hudson River B. Co.*, 80 N. Y. 622; *Payne* v. *N. Y. C.*, 83 id. 572, 579; *Stackus* v. *N. Y. C.*, 79 id. 465, 469; *Hill* v. *N. Y. C. R. R. Co.*, 2 Week. Dig. 95; *Urquhart* v. *City of Ogdensburg*, 13 Week. Dig. 109.) The degree of care required of an infant, and whether that degree has been exercised, is always a question for a jury. (*Sheridan* v. *N. R. R. Co.*, 36 N. Y. 43; *O'Mara* v. *H. R. R. R. Co.*, 38 id. 445; *Costello's Case*, 65 Barb. 92; *Fallon* v. *Cent. Park N. & E. R. R. Co.*, 64 N. Y. 13; *Byrne* v. *N. Y. C.*, 83 id. 622; *Dowling* v. *N. Y. C.*, Week. Dig., No. 20, p. 47.) The defendant was crim-

inally negligent. (Laws of 1879, chap. 273.) Against gross carelessness contributory negligence is no defense. (*Kenyon* v. *N. Y. C.*, 5 Hun, 479 ; *Green* v. *Erie R. R.*, 11 id. 334.)

RUGER, Ch. J. This action was brought to recover damages for the alleged negligent killing of Henry P. Wendell, the plaintiffs' intestate, by the defendant.

At the close of the plaintiffs' case the defendant moved to nonsuit upon the ground that the carelessness of the deceased contributed to the injury which occasioned his death. At the close of the whole evidence this motion was renewed upon the additional ground that there was no proof of negligence on the part of the defendant which contributed to the injury. These motions were denied and the defendant duly excepted.

This case is singularly free from conflicting evidence and of circumstances attending the casualty which would lead men of ordinary prudence and judgment to differ in regard to the cause of the accident.

The only material points upon which there occurs any discrepancy in the testimony of witnesses relates to the speed of the train and the distance of the train from the plaintiffs' intestate when he fell. The alleged dangerous speed of the train at the time of the accident is the only ground upon which negligence is imputed to the defendant. The plaintiffs produced several witnesses who occupied a point of view directly in front of the approaching train, and who testified that in their judgment the train approached the place of accident at the rate of from fifteen to twenty-five miles an hour. This comprised all of the plaintiffs' evidence upon this point.

From the uncontradicted facts in the case it appeared that the accident occurred at a street crossing in the city of Schenectady, within five hundred feet from where the locomotive usually stopped at this station ; that the train on this occasion stopped at its customary place, leaving one-third of its length below the point of the accident. The testimony of the experts showed that a train running faster than ten miles an hour

could not be stopped within that distance. The train hands testified that the train ran no faster than that. Considering this evidence in connection with the fact that the defendant employed two flagmen to warn travelers at this crossing, and that they were both actively engaged in the performance of that duty at the very time of the accident, it would seem to render it doubtful whether the charge of negligence against the defendant could fairly be sustained. This question was, however, left to the jury by the court below, and we do not consider it necessary to disturb their verdict upon this point.

We are, therefore, required to examine the question as to whether the plaintiffs' intestate was guilty of negligence in approaching the track.

At the time of the accident he was a bright, active boy about seven years of age, considered competent by his parents to go to school and upon errands alone. He was sometimes intrusted with the duty of driving a horse and wagon, and was in the habit of crossing the railroad track at the place where the accident occurred. Previous to the accident he had been stopped while attempting to cross by the flagmen stationed at that point, and had been before cautioned by them against attempting to cross in front of an approaching train. The accident happened in broad day-light, and from the place where it occurred a train could be seen for upwards of five hundred (500) feet south of the crossing. The street on which the boy was passing (Main street) marked the southern boundary of the settled part of the city. No buildings lined the railroad south of Main street, and from the point where the boy started to cross the track, no object intercepts a view of an approaching train for a long distance.

No conflict as to these facts appears in the evidence, and they are mainly proven by the statements of the plaintiffs' witnesses.

The case was tried upon the assumption by the court and both parties that the deceased was *sui juris* and that his parents were not chargeable with negligence in permitting him to be in the place where he was injured. In fact at the time of

the accident he was upon an errand for his mother which required him to cross this railroad track.

The assumption that the boy was *sui juris* implies that he had sufficient mental and physical capacity to be chargeable with the exercise of some degree of care and prudence and responsible for the consequences of some degree of negligence, but doubtless, owing to his tender years, a lesser degree of care was required of him than of one of mature age.

Nevertheless an infant, whatever his age, is not in law altogether exempted from the exercise of care and prudence in approaching a known danger. (*Honegsberger* v. *The Second Avenue R. R. Co.*, 1 Keyes, 570.) If the infant be of tender years and not *sui juris*, the negligence is imputable to his parents or guardians. If he be *sui juris*, it is imputable to himself. (*Thurber* v. *Harlem, B. M. & F. R. R. Co.*, 60 N.Y. 333.) But as was said by COWEN, J., in a case where the infant was between two and three years of age (*Hartfield* v. *Roper*, 21 Wend. 620): "When he complains of wrongs to himself, the defendant has a right to insist that he should not have been the heedless instrument of his own injury;" and whenever it affirmatively appears either that the injury was occasioned by the fault of the party injured, or where there is an entire absence of evidence showing that he is free from fault, he cannot recover.

The doctrines of this case have been cited and approved in numerous cases and are now well settled in this State. In the case of *Reynolds* v. *N. Y. C. & H. R. R. R. Co.* (58 N. Y. 248), this court decided that this rule required a nonsuit when the affirmative proof did not authorize the jury to find the absence of fault on the part of the injured infant.

It is true that the evidence of proper caution in approaching a dangerous place may appear either by direct proof or by proof of such facts and circumstances as would authorize the jury to find an absence of fault, but that fact must be made to appear by the plaintiff in one form or another. Without such proof, the court must non-suit the plaintiff.

As was said by EARL, J., in *Cordell* v. *N. Y. C. & H.*

*R. R. R. Co.* (75 N. Y. 332): "To maintain this action the plaintiff must show that the death of the intestate was caused solely by the negligence of the defendant, and this she must show by competent evidence." If the facts all point to the single conclusion that the deceased was negligent the court is bound to nonsuit.

The rule is stated by ALLEN, J., in *Thurber* v. *Harlem, B. M. & F. R. R. Co.* (60 N. Y. 331) : " *When the inferences to be drawn from the proof are not certain and incontrovertible* it cannot be decided as a question of law by directing a verdict or nonsuit, but must be submitted to the jury.

Negligence is a question of fact and should usually be decided as such, especially *whenever men of ordinary prudence and discretion might differ as to the character of the act,* under the circumstances of the case, the positions and conditions of the parties." (See also *Morrison* v. *Erie Railway Co.,* 56 N. Y. 308.) It is, however, at war with settled principles, to hold that when the facts show that an injured party has been guilty of negligence, much more of willful and persistent recklessness in approaching a known danger, that a court should permit a jury to charge the consequences of such conduct upon another party.

In the light of these principles let us examine the circumstances of this case. Shortly before the accident the deceased with a companion two years older was standing near the flagman's shanty on the south side of Main street and fifty-one feet east from where he was struck.

The flagmen had left the shanty and approached the track in the performance of their duty. The approaching train was in plain sight from the place where the boys stood for a distance of about five hundred feet from the crossing. They both suddenly started on a run on the south sidewalk of the street, the older boy some fifteen feet in advance, to cross in front of the approaching train. The flagmen who faced the boys shouted to them to stop, and waved their flags as signals to them. The older boy passed the flagmen and crossed in safety.

Eckel, one of the flagmen, stood on the sidewalk ten or fifteen feet from the track on which the train approached and endeavored to intercept the deceased, but the latter eluded him by either dodging or running under his outstretched arms, and reached the track when he slipped and fell.    The flagman followed and endeavored to rescue him, but the train was so near that he failed in his attempt, and the boy was killed.

It appeared that there was a team standing in the middle of the street where it had been stopped by the flagmen, and that while there were a few people on the northerly side of the street there were none on the southerly walk, except a woman and a child west of the tracks waiting for the cars to pass.    It did not appear that there was any noise to distract the attention of passers-by except that which heralded the approach of the advancing train, the ringing of its bell and the warning shouts of the flagmen.

All of the by-standers were aware of the approaching train and seemed to anticipate danger to the boys.

Every circumstance seemed to attract attention rather than to divert it from this train and the danger to be apprehended therefrom.    The boy knew the office to be performed by the flagmen for he had before seen them in the performance of their duty and had been warned by them.    He knew, therefore, that a train was approaching, even if he had not before seen it.

Under the circumstances we think he was negligent, either in going upon the track without looking to see whether a train was coming or not, or if he did look and see it, in doing so while it was in such dangerous proximity.    The exercise of active vigilance under such circumstances was a duty which the law imposes upon every person who attempts to cross a railroad track.    He should not be permitted to make close calculations to determine whether he can safely pass in front of an approaching body, and when the experiment has failed, charge the consequences of his mistake upon the owner of the colliding vehicle, or property.    (*Belton* v. *Baxter*, 54 N. Y. 246 ; 13 Am. Rep. 578.)

There is no question here as to any error of judgment, for such questions arise only when a party has without fault placed himself in a dangerous situation and is compelled to choose between the alternatives presented, upon the spur of the moment.

It is quite indicative of the weakness of the plaintiffs' case that they have felt themselves constrained to assert that the ringing of the bell on the defendant's train and the presence and conduct of the flagmen employed to warn travelers of its approach were possible causes of this catastrophe, thus argumentatively condemning the employment of the very precautions, for the omission of which, railroad corporations have so frequently been adjudged guilty of negligence by the courts. The rules of conduct which should govern the approach of travelers to crossings over street railways or in the track of vehicles whose rate of progress is under the control of their drivers are necessarily quite different from those applicable to the crossing of the track of steam railroads whose trains traverse vast distances, carrying great burdens and moving with a momentum necessarily destructive to bodies with which they come in contact. It is within the knowledge and comprehension of the most immature that these agencies cannot be arrested in time to obviate danger to those coming in their way, and therefore a greater degree of care is imposed upon those who have occasion to use their tracks. (*Barker* v. *Savage*, 45 N. Y. 191.) While railroad corporations should be held to a strict degree of care in moving their trains in crowded and dangerous places, and through populous cities, it would be quite impracticable to require them to move them at such a rate of speed as to be able at all times to arrest their progress to avoid persons moving upon their tracks and thus insure their safety.

There is no point of view from which we can regard this case that would seem to sustain the finding of the jury that the plaintiffs' intestate was free from fault, contributing to the injury to recover damages for which this action is brought.

We are of the opinion that the court erred in refusing to nonsuit the plaintiffs upon the case as it appeared at the close

of all of the evidence, and the judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

DANFORTH, J. (dissenting), was of opinion that the question whether the evidence disclosed an absence of negligence on the part of the child contributing to his injury was, under the circumstances of the case, properly submitted to the jury, and he was, therefore, in favor of affirmance of the judgment appealed from.

All concur with RUGER, Ch. J. except DANFORTH, J., dissenting.

Judgment reversed.