By the Court.—O’ Gorman, J.
On May 19, 1875, the plaintiff, Mary A. Ryder, then an infant between four and live years old, fell into an excavation made by the defendants in Eightieth street between Third and Second avenues, and was injured thereby. This excavation was made for the purpose of laying a 48-inch main in the street, and it extended all along, and parallel with the southerly side of the street, a space of about three feet being left between the southerly edge of the excavation and the curbstone of the southerly sidewalk, and this excavation had existed for several weeks before the accident. The plaintiff lived with her father and mother in a tenement house on the south side of the street. In the progress of this excavation, the paving stones which had been taken up, were gathered in piles three feet high and twenty or twenty-five feet apart on the southerly sidewalk. One of these intervals or gaps between piles was before the house in which the plaintiff thén lived. Previous to the accident, the street between the curbstone and the excavation before the plaintiff’s said house had caved in and the curb had settled considerably, making the sidewalk there incline towards the cut. At about five o’clock in the afternoon, and in broad daylight, *223 the plaintiff was found in the excavation in front of the house, but how exactly she got into it, the evidence does not disclose. Five or ten minutes before, she had got leave from her mother to go down stairs to the water-closet,—had been warned by her mother not to go to the street,—did go out on the sidewalk,—met there some other children, with whom she played tag, and in running about with them she went right into the hole. She had been forbidden by her mother to go into the street that day, because of this excavation into which she fell. She knew the opening was there. She had been warned not to go near the hole by her father the night before, and promised her father not to go near it. She got the same warning from her sister and made the same promise, and she knew what it meant. She seemed, from the evidence, to have been a particularly bright and intelligent child, in possession of all her senses and faculties.
The questions now to'be considered are: First. Was ¡here proof of negligence on the part of the defendants': Second. Did the evidence show that the plaintiff’s negligence contributed to the injury % Third. Was the verdict against the weight .of evidence, or excessive %
It is convenient that the second of these questions should be first examined.
Notwithstanding the unusual intelligence of the infant plaintiff, at the time of her accident, she was then under five years of age, and I do not know of any authority hold-that an infant so young should be regarded as “ sui juris ” (McGarry v. Loomis, 63 N. Y. 106). But whether suijuirs or not, if she, by want of such care and caution, on her own part, as could have been fairly expected and due, from one of her years, and knowledge of the existence and nature of the danger to be guarded against, had caused the injury, such negligence on her part would go far to defeat this action. If “sui juris” it would be negligence, imputable to herself (Wendell v. R. R., 91 N. Y. 426 ; Thurber v. R. R., 60 Id. 333-4). If not “ sui juris” and her parents had been negligent in leaving her free to run at *224 large on the sidewalk, defective as it was, and so near a dangerous excavation, then their negligence, concurring with her negligence, would defeat the action (Reynolds v. R. R., 58 N. Y. 248 ; Ihl v. R. R., 47 Id. 322). She had no doubt the right to use the sidewalk even for play (McGuire v. Spence, 91 N. Y. 303-6; McGarry v. Loomis. 63 Id. 107). But warned, as she was,, of the dangerous excavation, so near the sidewalk, if she, by recklessness, or the want of such ordinary care as was due from her, considering her age and intelligence, fell into the chasm, it would be imputable to her as contributing negligence (Honegsburger v. R. R. 1 Keyes, 570 ; cited in 91 N. Y. 426).
Whether the - evidence of contributory negligence on the part of the infant plaintiffs here, or her parent, or both, was sufficient as matter of law to have made it proper for the trial judge to dismiss the complaint, is a question not free from doubt, but the preponderance of authority seems to me in favor of leaving it as matter of fact to the jury (McGuire v. Spence, supra; Stackus v. R. R., 79 N. Y. 466). The question as to the existence of negligence on the part of the defendants, was also rightly left to the jury as a question of fact. Although they had the right to dig the excavation in question and it was done in pursuance of their civic duties, and although they do not guarantee the absolute safety of the public streets, yet they are bound to take reasonable precaution for the protection of citizens, and whether they have done so in this case is a question of fact.
The next question is as to the amount of damages, and, there this court has the power, and is indeed bound to interpose whenever the interest of justice requires (Houghkirk v. President, &c., 92 N. Y. 222). In this respect the verdict here is not warranted by the evidence. Beyond rhe injury to the plaintiff’s arm, for which she is entitled to substantial damages, there is no sufficient reliable testimony that she received any other injury by reason of her fall into the excavation, of which the negligence of the de *225 fendants was the proximate cause. For this injury to her arm, which was neither grave nor lasting in its effect, the verdict rendered by the jury, $6,600, would be clearly unreasonable and excessive.
The accident occurred on May 19,1875. The weight of evidence is that she made no complaint of pain in her hip until the winter of 1879. The action was begun in December, 1882.
After a careful examination of the evidence we have come to the conclusion that the verdict at its present amount should not stand. Unless, therefore, the plaintiff consents to accept the sum of $3,000 in full satisfaction of the claim in suit, there must be a new trial, with costs to abide the event; and the order denying the motion for a new trial should be reversed, with $10 costs.
Sedgwick, Ch. J., and Truax, J., concurred.