(7 App. Div. 253)

## SMITH v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department.   June 29, 1896.)

STREET RAILROADS—INJURIES TO PERSON ON TRACK.

While plaintiff's decedent was driving across defendant's tracks, a car struck his wagon, and killed him.   When decedent first drove on the track, the car was far enough away for the gripman to have stopped it, but he made no effort to reduce the speed so as to have it under control. There was nothing to obstruct the gripman's view of plaintiff's wagon, and he made no attempt to stop until quite close to the wagon.   *Held,* that the question as to the gripman's negligence should have been submitted to the jury.

Appeal from court of common pleas, trial term.

Action by Sarah Emily Smith, as administratrix of Thomas Smith, deceased, against the Metropolitan Street-Railway Company, to recover for the death of plaintiff's intestate.   From a judgment entered on a decision of the court dismissing the complaint on the merits on a trial before a jury, plaintiff appeals.   Reversed.

For decision on motion by defendant to reduce the damages alleged in the complaint, see 35 N. Y. Supp. 1062.

The action was brought to recover damages resulting from the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant.   At the time of the accident resulting in the death the defendant was operating a street railway by cable along and through Broadway, in New York City, and the deceased was engaged in driving a United States mail wagon.   The accident occurred at the junction of Broadway and Bleecker street, about 9:50 o'clock of the night of December 30, 1894, and the death resulted January 2, 1895.   The evidence given in the case tended to show the following facts relating to the negligence of the defendant and the absence of contributory negligence on the part of the deceased:   The night was clear, and there was an electric street light at the junction of the two streets, so that the gripman and the deceased could see as well as though it had been daylight.   The route deceased was driving before the accident took him through Houston street to Broadway, up Broadway to Bleecker street, and through Bleecker street to Station C, at Hudson and Bank streets.   At the corner of Broadway and Houston street he met a cable car in charge of Gripman Ryan, the car going up street on the easterly track.   The two men spoke to each other.   Deceased drove along up Broadway ahead of the car, and on the easterly side of the street and tracks, at an ordinary jog trot. The car went along at a creepy speed, on account of the gipsy or automatic grips, which were then in front of the cable building.   The car stopped in the middle of the block at the flag station, and deceased was then within 40 or 50 feet of Bleecker street, and then turned westerly to cross the tracks into Bleecker street, on the westerly side of Broadway.   When he reached the west track, another cable car, going down Broadway on the westerly track, was 100 feet above Bleecker street, going at a speed of 7 to 9 miles an hour.   The gripman on this car did not attempt to apply his brake until the car was at the Bleecker street crossing, within 10 or 15 feet of deceased's wagon, which was then on the westerly track.   Deceased's wagon kept on at the same jog trot, and almost got across into Bleecker street, when the car struck the rim of the hind wheel of the wagon, and deceased was thrown from the wagon to the ground, and received the injuries which caused his death.   Under the conditions which existed at the time, the car could have been stopped within 16 feet when going at full speed, and when going slowly could have been stopped within 3 or 4 feet, or less.   There was evidence given by the defendant tending to show a somewhat different state of facts.   The evidence was conflicting.   Upon the facts stated the court dismissed the complaint, holding as a matter of law that the deceased was guilty of contributory negligence.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

Frank E. Blackwell, for appellant.
Henry A. Robinson and John T. Little, Jr., for respondent.

WILLIAMS, J.   The learned court was not justified in dismiss-
ing the complaint either upon the ground of a failure of proof of
negligence on the part of the defendant or on the ground of failure
of proof of absence of contributory negligence on the part of the
deceased.   In considering whether the complaint should have been
dismissed without a submission of the case to the jury, the plain-
tiff is entitled to have the benefit of the facts most favorable to her,
which the jury would have been justified in finding upon the evi-
dence.   The jury, and not the court, were to determine what the
real facts were from the conflicting evidence.   The evidence given
by the plaintiff presented a question for the jury as to both of these
questions.   Whether her witnesses or those sworn in behalf of the
defendant told the truth was a question for the jury.   In this case
it would be usurping the functions of a jury for the trial court or
for this court to determine as to the credibility of the witnesses.
Upon the evidence presented by the plaintiff it was for the jury to
say whether the gripman was guilty of negligence.   The deceased
had started to cross the tracks while the car was such a distance
away that he could have stopped the car, and yet the gripman
made no effort to slow down the car, so as to have it under control,
but permitted it to run at a high rate of speed until it was so close
to deceased's wagon that he was apparently unable to avoid a col-
lision.   There was evidence tending to show that he made no effort
to set the brake until he was quite close to the wagon.   The street
was clear, and deceased's wagon was in plain view, and had com-
menced to cross the track, and there was evidence tending to show
that it would have been very easy for the gripman to slow down his
car, and get it under control, and so avoid a collision.   Allowing it
to run at full speed and unchecked, as he did, the wagon still had
nearly cleared the track, and only the rim of the hind wheel was
struck.   It was a question for the jury whether, by the exercise
of ordinary care, he could have avoided the accident, and, if so,
it was his legal duty to exercise this care, and the failure to exercise
such care would be negligence.   These same suggestions are ap-
plicable to the question of the absence of contributory negligence
on the part of the deceased.   He started to cross the tracks while
the car was a long distance away.   He had a right to rely upon the
exercise by the gripman of ordinary care to avoid a collision.
   The strict rules applicable to steam railroads and travelers in
the highway are not applicable to street railways and wagons trav-
eling along the streets of a city.   As to the former, the rule is that
the railroad trains have the right of way, and when travelers in
the highway know that trains are approaching it is the absolute
duty of the travelers in the highway to keep off the track until the
trains have passed by.   No such rule is applicable to street rail-

ways and teams traveling in the streets of a city. The teams have a right to cross the railway tracks, although cars are known to be approaching; otherwise teams would rarely be able to cross the tracks of street railways. Especially would this be true in Broadway, where cars are at all times in view, and known to be approaching the point where teams are to cross. Care in these cases is required to be exercised on both sides to avoid collisions between cars and teams, and whether it is negligent on the part of drivers of teams to attempt to cross a street-railway track when a car is approaching is dependent upon the circumstances of each particular case. In Wendell v. Railroad Co., 91 N. Y. 429, it was said by Ruger, C. J.:

"The rules of conduct which should govern the approach of travelers to crossings over street railways or in the track of vehicles whose rate of progress is under control of their drivers are necessarily quite different from those applicable to the crossing of the track of steam railroads, whose trains traverse vast distances, carrying great burdens, and moving with a momentum necessarily destructive to bodies with which they come in contact. It is within the knowledge and comprehension of the most immature that these agencies cannot be arrested in time to obviate danger to those coming in their way, and therefore a greater degree of care is imposed on those who have occasion to use their tracks. Barker v. Savage, 45 N. Y. 191."

And in Moebus v. Herrmann, 108 N. Y. 354, 15 N. E. 415, Judge Danforth said:

"The duty imposed upon a wayfarer at the crossing of a street by the track of a railroad to look both ways does not, as a matter of law, attach to such persons when about to cross from one side to the other of a city street. The degree of caution he must exercise will be affected by the situation and surrounding circumstances. In the former case there is obvious and constantly impending danger not easily or likely to be under the control of engineers. In the latter case the vehicles are managed without difficulty, and injuries are infrequent."

Under the circumstances disclosed by the evidence of the plaintiff in this case, it could not be said as matter of law that the deceased was guilty of negligence in attempting to cross these tracks as he did. It was a question of fact to be determined by the jury, and it could not be determined by the court. Whether it was prudent or imprudent for the deceased to cross the track under the circumstances was a question of fact to be determined by the jury. Belton v. Baxter, 58 N. Y. 411. The facts in this case are entirely unlike those in the case of Doller v. Railway Co. (decided by us at the present term) 39 N. Y. Supp. 770. In that case the deceased was on foot, and was struck by the car just as he stepped over the first rail upon the track. The car was quite close to him when he stepped upon the track, and was running rapidly. He should have kept off the track until the car passed by. There was no opportunity, after the deceased stepped upon the track, for the gripman to slow down his car, and avoid the accident. In this case the whole team had entirely crossed the track, except the outer rim of the hind wheel, when the accident occurred. The car must have been some distance away when the team started to cross over, and there was full opportunity for the gripman to slow down his car,

and avoid the collision.    We think the learned trial court erred in taking the case from the jury and dismissing the complaint.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide event.    All concur.