Jacob Fishbach, Respondent, *v.* The Steinway Railway Company of Long Island City, Appellant.

*Negligence — a wagon struck by a motor car coming from behind — duties of the parties, respectively.*

In an action based upon the alleged negligence of an electric railway, it appeared that the plaintiff was driving at half-past five o'clock on a dark morning in a covered baker's wagon upon the track of the defendant, an electric railway company, the road at the side of the track being out of repair; that before he drove upon the track he looked to the rear and saw no car approaching, but that after having driven about three blocks he was run into from the rear by a motor car running at the rate of five or six miles an hour.   The motorman testified that he rang the bell, but that he did not discover the wagon of the plaintiff until his car was within fifteen to eighteen feet of the wagon, and that he then reversed the motive power, but was unable to prevent a collision.   The plaintiff had been up all night and was in a sleepy condition, and it was proved that before this time he had been found asleep in his wagon upon the track.

*Held,* that the questions of negligence and contributory negligence were for the jury;

That a person driving upon a car track must exercise reasonable care, which must be determined from a consideration of the obligations resting upon the operator of the car, the burden of use which general traffic imposes upon the street, and the rule that a car has the paramount, but not the exclusive, right of way;

That the operator of a street car was bound to have the car under control and to so operate the same as to give vehicles a reasonable opportunity to get off the track, and that he was bound to exercise reasonable diligence in making discovery of obstructions in front of him.

Appeal by the defendant, The Steinway Railway Company of Long Island City, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of

Queens on the 12th day of June, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Queens, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 12th day of June, 1896, denying the defendant's motion for a new trial made upon the minutes.

*Eugene L. Bushe*, for the appellant.

*Ferdinand E. M. Bullowa*, for the respondent.

HATCH, J.:

The testimony upon the part of the plaintiff tended to establish that, at about five-thirty o'clock on the morning of December 11, 1895, he drove a covered baker's wagon upon defendant's tracks. He was accompanied by his son, who sat upon the seat in the wagon by his side. The wagon was first driven in the west-bound track, but seeing a car approaching upon that track in his front he turned off and drove upon the east-bound track to allow the car to pass. Plaintiff and his son both testify that when they came upon the east-bound track they could see for a distance of two or three blocks; that each looked to the rear for the purpose of seeing whether a car was approaching from that direction, and, seeing none, continued to drive west upon the track for a distance of about three blocks, occupying a period of from four to eight minutes. Neither the father or son looked to the rear after making their first observation. Defendant's tracks at this point had been recently constructed, and plaintiff's evidence tended to establish that the road by the side of the track was out of repair, and that driving therein would be attended with difficulty, if it could be done at all. There is some proof in this connection that the condition, to some extent, was due to the construction of defendant's road. It is, however, a matter of inference arising from the evidence, rather than a fact established by direct proof. Plaintiff claimed, and his evidence tends to support the claim, that while in this position the defendant, without any warning, ran its trolley car into the rear end of his wagon with force sufficient to shatter the same, injuring the plaintiff's horse so that he was thereafter required to kill it, and inflicting severe injuries to his person.

The testimony upon the part of the defendant tended to establish that the morning was very dark; that objects could not be seen for a greater distance than eighteen feet; that the car was running at the rate of five or six miles an hour, and the motorman was sounding the bell; that he did not discover plaintiff's wagon upon the track until his car was within fifteen to eighteen feet of it; that he then reversed the motive power of the car, but was unable to prevent a slight contact with the wagon, inflicting little, if any, damage thereto. Further proof tended to establish that plaintiff was a baker, had been up all night, was in a sleepy condition, and had, prior to that time, been found asleep in his wagon upon the tracks. We are of opinion that upon this proof the court was correct in holding that the question of defendant's negligence, and of plaintiff's contributory negligence, became questions of fact for determination by the jury.

We should not have deemed it necessary to give expression to our views in a written opinion in this case, were it not for the fact that in one opinion at least, now relied upon to reverse this judgment, expression of what facts constituted contributory negligence as matter of law in a somewhat similar case does not meet with approval in our present view. In *Winter* v. *Crosstown Streeet R. Co.* (8 Misc. Rep. 362) the court held as matter of law that a failure by the driver of a wagon, on a street car track, to remove his wagon therefrom in time to avoid collision with a car approaching from his rear when, by looking to his rear, he might have discovered the car in time to leave the track, and avoid the collision, constituted contributory negligence even though the motorman might by the exercise of proper care have avoided the collision. This case is easily distinguishable from the present in the fact that the accident happened in broad daylight; the driver had made no attempt to observe the approach of the car, and had been in the track for nearly half an hour, and concededly the bell, announcing the approach, was sounded within the driver's hearing. In the present case, if plaintiff is to be believed, he made observation for the approaching car, was on the track but a short time, and had driven thereon for a short distance, and no car was visible when he looked for a distance of two or three blocks, and he testified that he heard no bell ring upon the approaching car. I do not wish, however, to dispose of the present question upon this distinction. The opinion in the *Winter* case was written

by the present writer. Subsequent reflection, however, has led my mind to the conclusion that its doctrine in this respect is unsound, and that its view is not in harmony with the current of contemporary authority and later decisions. This decision was based upon *Adolph* v. *Cen. Park, etc., R. R. Co.* (76 N. Y. 538). There are some expressions in the opinion of Judge FOLGER which are susceptible of a construction which would support the rule laid down in the *Winter* case. But subsequent interpretation of that decision by the courts has left the case to stand upon no more stringent rule than that the person driving in a car track must exercise reasonable care, and that this is to be determined from a consideration of the obligations resting upon the operator of the car, the burden of use which general traffic imposes upon the street, and the rule that the car has the paramount, but not the exclusive, right of way. (*McClain* v. *Brooklyn City R. R. Co.,* 116 N. Y. 459; *Bernhard* v. *Rochester Ry. Co.,* 68 Hun, 371.)

In many streets the burden of use by the street cars themselves would amount to an exclusive use of the street if all other traffic were to halt when a car was in motion. So the care required is relative, having regard to the burden of use and the right of vehicles as well as street cars to occupy the street for passage. The increasing burden which traffic has imposed upon many streets, and the necessity which arises out of that condition, has modified somewhat the rule of the earlier cases. The operator of a street car is bound to have the car under control, and to so operate the same as to give vehicles a reasonable opportunity to get off the track, and to exercise reasonable diligence in making discovery of obstructions in his front. (*Fleckenstein* v. *Dry Dock, etc., R. R. Co.,* 105 N. Y. 655; *Ward* v. *N. Y. & H. R. R. Co.,* 79 Hun, 390; *Meisch* v. *Rochester E. Ry. Co.,* 72 id. 604; *Smith* v. *Met. St. Ry. Co.,* 7 App. Div. 253; *Kessler* v. *Brooklyn Heights R. R. Co.,* 3 id. 426; *Rooks* v. *Houston, W. S. & P. F. R. Co.,* 10 id. 98.)

We have before had occasion to assert that in this class of cases each must be determined upon its particular facts. (*Irvine* v. *Palmer Mfg. Co.,* 3 App. Div. 388.)

In this case we think that the questions of negligence and contributory negligence were for the jury and that the case was properly submitted.

It was not error to allow plaintiff to testify to the value of the horse. The testimony, while slight, showed that he had some knowledge upon the subject, and it was for the jury to determine how much weight should be given to his opinion. The statement of what he paid was some evidence of value, although not responsive to the question. If the defendant did not desire it to remain it should have moved to strike it out, as the objections did not reach the matter.

No substantial error appearing, the judgment should be affirmed, with costs.

All concurred.

Judgment and order unanimously affirmed, with costs.