SAMUEL TUCKER, as Administrator, etc., Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

The law requires a traveler on a highway, before crossing a railroad track, to look and listen for the approach of trains, and if he omits to do so and suffers injury, he cannot maintain an action against the railroad company, although it was guilty of negligence.

In an action to recover damages for injuries so sustained, the plaintiff must show that he did his duty in this respect, or prove facts from which the inference can reasonably be drawn that he did.

The question at what age an infant's responsibility for negligence may be presumed to commence, is not one of fact, but of law.

In the absence of evidence tending to show that a boy twelve years of age was not qualified to understand the danger and appreciate the necessity for observing that degree of caution in crossing a railroad track an adult would, he must be deemed *sui juris* and chargeable with the same measure of caution as an adult.

In an action to recover damages for alleged negligence causing the death of T., plaintiff's intestate, the following facts appeared: T. was a boy twelve years old, intelligent, accustomed to attend school and assist the family by his labor; he lived near defendant's road; he was killed by one of defendant's locomotives when attempting to cross its tracks; the day was windy and it was snowing, but not enough to obstruct the view; the street upon which he was traveling was crossed by four of defendant's tracks; the first was a switch track upon which cars were standing on each side of the street, a passage-way having been left open for teams and individuals to pass along the street. T. stopped in the centre of the switch track facing in the direction of the locomotive which was back-

ing down at a high rate of speed; if he had looked he could have seen 186 feet down the track; from the point where he stood to the center of the track where he was struck and killed, the distance was fourteen feet. T., after changing a bag he was carrying from one shoulder to another, started on; after taking one step he had an unobstructed view down the track on which the locomotive was coming, for two streets; he did not look in that direction after he started.  *Held*, that T. was *sui juris* and was guilty of contributory negligence; and that the submission of the question to the jury was error.

(Argued January 28, 1891; decided February 24, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made November 6, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for alleged negligence causing the death of plaintiff's intestate.

The plaintiff's intestate, a boy of twelve years of age, while crossing Smith street in the city of Buffalo on the 27th day of December, 1885, was run over by defendant's locomotive and killed.

It appears that decedent and his brother were passing southerly down Smith street, which was crossed between Oneida and Bristol streets by four railroad tracks belonging to the defendant corporation, by three tracks of the West Shore railroad, and two tracks of the Lake Shore and Michigan Southern railroad.  They were on the westerly walk of the street, and, after passing over the West Shore tracks, came to a switch track belonging to the defendant.  The switch track on each side of Smith street had cars standing upon it, but a passage-way was open on Smith street to enable teams and individuals to cross.  The plaintiff's intestate was carrying upon his shoulder a bag partially filled.  When he reached the centre of the switch track he changed the bag from one shoulder to the other, resting it on the bumper of the car as he did so.  While changing the bag he faced in the direction of the locomotive which was then backing down at a high rate

of speed. Had he looked he could have seen down the track on which this locomotive was coming a distance of 186 feet. From that point to the center of the track where he was struck and killed was a distance of fourteen feet. To the north rail of the track it was eleven feet, and between the southerly rail of the switch track and such north rail it was eight feet and five inches. After changing the bag he started on, his brother being then about fifty feet ahead of him. After taking one step there was an unobstructed view down the track on which the locomotive was coming for two streets, and before reaching the north rail it was possible to see along it for the distance of nearly a mile. When he had reached about the centre of the track he was struck and killed. The plaintiff introduced evidence tending to show that the flagman in charge of this crossing was not out when the plaintiff's intestate passed, and that the bell was not rung or the whistle of the engine blown until the moment when the accident occurred, but as the question of contributory negligence is alone considered in the opinion further facts as to that branch of the case are not given.

At the close of the evidence defendant's counsel asked the court to direct a verdict for defendant, which was denied.

Further facts appear in the opinion.

*James Frazer Gluck* for appellant. The plaintiff utterly failed to show that the intestate was free from contributory negligence, and, taking the construction of the evidence most favorable to the plaintiff, it conclusively established that the intestate did not exercise that degree of care which the law requires. (*Cullen* v. *D. & H. C. Co.*, 113 N. Y. 668; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 252; *McDonald* v. *L. I. R. R. Co.*, 27 N. Y. S. R. 483; *Wendell* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 426; *Beisegal* v. *N. Y. C. R. R. Co.*, 40 id. 9; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 70 id. 119; *Woodward* v. *N. Y., L. E. & W. R. Co.*, 106 id. 369; *Young* v. *N. Y., L. E. & W. R. Co.*, 107 id. 500; *Adolph* v. *C. P. R. Co.*, 76 id. 553; *Cosgrove* v. *N. Y. C. &*

*H. R. R. R. Co.*, 87 id. 91.) The verdict rendered by the jury is contrary to law, and the evidence in the case, because the great preponderance of evidence is, and the jury were bound to find in accord with it, that the plaintiff's intestate was guilty of contributory negligence in approaching the track upon which he was struck. ( *Wendell* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 428; *Cranston* v. *N. Y. C. & H. R. R. R. Co.*, 103 id. 614; *Hale* v. *Smith*, 78 id. 480; *Hunter* v. *N. Y., O. & W. R. R. Co.*, 116 id. 624.) It was error to refuse to charge the jury that "there is no evidence in the case that the plaintiff's intestate looked; no direct evidence in the case that the boy looked for the approaching train after he crossed the switch track," and the exception to the ruling of the court was well taken. (*Storey* v. *Brennan*, 15 N. Y. 524.)

*Henry W. Hill* for respondent. The verdict of the jury, rendered upon the trial, was amply supported by the evidence. (*Hackford* v. *N. Y. C. R. R. Co.*, 53 N. Y. 654; *Stone* v. *D. D., E. B. & B. R. R. Co.*, 115 id. 104–112; *D. & M. R. Co.* v. *Van Steinberg*, 17 Mich. 99; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 N. Y. 359–364; *Greany* v. *L. I. R. R. Co.*, 101 id. 426, 427; *Palmer* v. *N. Y. & H. R. R. Co.*, 112 id. 242–245; *Wall* v. *D., L. & W. R. R. Co.*, 54 Hun, 460; *Glushing* v. *Sharp*, 96 N. Y. 677; *LeGuen* v. *Gouverneur*, 1 Johns. Cas. 492.) A general verdict settles in favor of the prevailing party every litigated question of fact, and a finding that there was no contributory negligence on the part of plaintiff's intestate must have preceded the finding of a lawful verdict. ( *Wolfe* v. *G. F. Ins. Co.*, 43 Barb. 400; 41 N. Y. 620; Code Civ. Pro. § 1186; *Murray* v. *N. Y. L. Ins. Co.*, 96 N. Y. 622, 623.) The evidence establishes that George James Tucker exercised all the care and caution that a child just passed twelve years of age would be expected and required to exercise under all the circumstances in which he was placed at the time. (*Greaney* v. *L. I. R. R. Co.*, 101 N. Y. 426; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 id. 364; *Terry* v. *Jewett*, 78 id. 338; *McGovern* v. *N. Y. C. & H. R. R. R. Co.* 67 id. 423;

*Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 521; *Palmer* v. *N. Y. C. & H. R. R. R. Co.*, 112 id. 241; *Maher* v. *N. Y. C. & H. R. R. R. Co.*, 67 id. 421; *Stone* v. *D. D., E. B. & B. R. R. Co.*, 115 id. 111; *Spooner* v. *D., L. & W. R. R. Co.*, 115 id. 32; *Birkett* v. *K. I. Co.*, 110 id. 506.) The ordinances of the city of Buffalo, regulating the speed of trains at the Smith street crossing, the *locus in quo* of the accident, were properly admitted in evidence. (*McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 63 N. Y. 527, 531; *Kupfle* v. *K. Ice Co.*, 84 id. 491; *Van Raden* v. *N. Y., N. H. & H. R. R. Co.*, 30 N. Y. S. R. 302; *Archer* v. *N. Y., N. H. & H. R. R. Co.*, 106 id. 602; *Houghkirk* v. *D. & H. C. Co.*, 92 id. 227.) The failure to ring the bell, sound the whistle, the absence of the flagman and the running of an engine rapidly backwards through a thickly-settled portion of a city, as well as the locality of the crossing and the condition of the weather at the time, are circumstances to be presented to the jury, with all the other circumstances of the case, as bearing upon the question of negligence. (*Ryan* v. *N. Y. C. & H. R. R. R. Co.*, 37 Hun, 188; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 63 N. Y. 527–531; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 521.) The plaintiff fully satisfied the jury by a preponderance of evidence that defendant was negligent in the operation of its engine on the occasion in question, and that such negligence caused the untimely death of plaintiff's intestate, and the verdict of the jury should not be disturbed. (Code Civ. Pro. § 1186; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 63 N. Y. 522; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Spooner* v. *D., L. & W. R. R. Co.*, 115 id. 22; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 id. 359–364; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 521; *Griffin* v. *N. Y. C. R. R. Co.*, 40 id. 45; *Finklestein* v. *N. Y. C. & H. R. R. R. Co.*, 41 Hun, 34.) It cannot be held, as a matter of law, that the verdict rendered in this action is for excessive damages. (*Birkett* v. *K. I. Co.*, 110 N. Y. 506, 508; *Houghkirk* v. *D. & H. C. Co.*, 11 Abb. [N. C.] 72; *McGovern* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. Y. 417; *Oldfield* v. *N. Y. C. & H. R. R. R. Co.*, 14

id. 518; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 518; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 id. 359; *Spooner* v. *D., L. & W. R. R. Co.*, 115 id. 22.) It was not error to permit the witness, Miller, to testify as to the fact of defendant's flagman walking lame on the day of the killing of plaintiff's intestate, for the physical condition of the flagman at that time and his unfitness to perform the duties devolving upon him, were competent, as bearing upon the location of flagman at the time, and upon defendant's negligence. (*In re Morgan*, 104 N. Y. 85; *Turner* v. *City of Newburgh*, 109 id. 308–310; *Marks* v. *King*, 64 id. 628; *Platner* v. *Platner*, 78 id. 101; *Holmes* v. *Moffat*, 120 id. 310; *Mosher* v. *City of Auburn*, 14 Wkly. Dig. 477; *Pennsylvania Co.* v. *Roy*, 102 U. S. 451–458.) Plaintiff's intestate, who, when within from eight and one-half to eleven feet of the track over which engine No. 478 was backing, stopped, listened and looked in an easterly direction and seeing neither signal nor approaching engine, had a right to assume that no train nor engine would come along until he could cross the track. (*Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 N. Y. 364; *Weil* v. *D. D., E. B. & B. R. R. Co.*, 119 id. 151.)

Parker, J. Whether the complaint should have been dismissed after the evidence was all in, on the ground that the negligence of the plaintiff's intestate contributed to the accident, presents the only question which we shall discuss on this review.

In its disposition we shall consider first whether, assuming the intestate to have been *sui juris*, the evidence adduced authorized the jury to find that plaintiff's intestate was free from contributory negligence. If not, whether the fact that the intestate was only a little over twelve years of age, considered in connection with the other circumstances proven, could be permitted to effect a different result.

The plaintiff, in order to recover for the damages sustained by the killing of his intestate, which was occasioned by his being run over and killed by a locomotive on the defendant's

road while crossing its tracks on Smith street in the city of. Buffalo, was burdened with the necessity of proving, first, that the defendant was guilty of negligence ; and, second, that he was free from all fault contributing to that result.

The law requires a traveler before crossing a railroad track on a public highway to look and listen for the approach of trains. If he omit to do so and suffers injury while crossing, he cannot recover because of such omission. That which it is. his duty to do, he or, in the case of death, his representative must, in an action to recover for damages sustained, prove was done or at least must prove facts from which inference. can reasonably be drawn that he performed his duty in that respect. It will not be presumed that he looked, it must be. proven. The plaintiff attempted to meet this requirement by the evidence of a witness who testified that before the intestate crossed the track, in the doing of which he was struck by the locomotive and killed, he stopped in the centre of the switch track eleven feet from the north rail of the track upon which. the locomotive was running and shifted the bag which he was carrying from one shoulder to the other, resting it upon the bumper of a car standing on the track as he did so, and that. at this time his face was turned in the direction of the approaching engine. He then passed on in a southerly direction for the distance of about fourteen feet when he was struck. The witness further testified that after changing the bag from one shoulder to the other, he did not again turn his head to the left as it would have been necessary for him to do in order to see the. approaching locomotive. It is urged that inasmuch as it. appears that his face was turned in the direction from whence the locomotive came, that a jury could be permitted to find that he did look and thus observe that measure of care and caution which the situation imposed. We are unable to agree with that contention, for it appears that from the place where. he was standing it was possible to see along the track a distance of 186 feet ; that when he reached the south rail of the switch track, a distance of eight feet and five inches from. the north rail of the track upon which the locomotive was

running, he could see for two streets away, and that before reaching such rail the view was unobstructed for nearly a mile. It seems to be clear, therefore, that the plaintiff did not meet the burden resting upon him by merely showing that his face was turned in that direction, for if he had looked he must have seen this engine approaching. But if the inference was permissible that he looked at the moment of changing the bag, it does not meet the requirements of the case. He had still six tracks to cross and was then eleven feet from the south rail of the first track. To look then and not again, to go on from that point without observing the further precaution of watching for the approach of trains upon tracks almost constantly in use, was not a proper observance of that care which it was his duty to exercise. (*Cullen* v. *D. & H. C. Co.*, 113 N. Y. 668; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 70 id. 119; *Woodard* v. *N. Y., L. E. & W. R. R. Co.*, 106 id. 369; *Young* v. *N. Y., L. E. & W. R. R. Co.*, 107 id. 500.)

And this the plaintiff's intestate did according to the evidence of the witness Martin, who was called by the plaintiff to prove that at the moment of shifting the bag Tucker was facing in the direction of the approaching locomotive. Indeed, it must have been so, for had he looked at any moment before reaching the track, he would have observed its coming.

It appears that the wind was blowing severely and snow was falling rapidly, and it is suggested that by reason thereof he may have been prevented from seeing the approaching locomotive, but the evidence introduced, on the part of the plaintiff, shows that such was not the fact. There were two little girls on the cars at the crossing at the point where the boy stood when shifting the bag from one shoulder to the other, and they saw the locomotive coming. Frank Surmes was on Smith street near the place of the accident at the time of its occurrence, and he testified that he saw it approaching when it was at Oneida street. The witness Martin also saw it when 350 feet distant. No witness pretends that it could not be seen, and no room exists for the inference that the plaintiff's intestate could not have seen it had he looked.

We are thus led to the conclusion that there was no evidence authorizing the jury to find that the plaintiff observed that degree of care and caution which the law imposes on one while in the act of crossing railroad tracks on a public street. If he had been an adult, therefore, it would have been the duty of the court to have dismissed the complaint. Does a different rule apply because the intestate was a boy only a little over twelve years of age? An infant of tender years is not expected to exercise the same care and caution which is required of a person of more advanced age, so that it frequently becomes a question for the jury, under proper instructions by the court, whether a child exercised that measure of care and caution which should be required and expected from it.

In the case of *McGovern* v. *N. Y. C. & H. R. R. R. Co.* (67 N. Y. 417), a boy eight years of age, while crossing a railroad track, was struck by a backing engine and killed. In that case this court held that it was a question for the jury to determine whether he exercised that degree of care and circumspection which a child of his years and maturity of judgment would be expected to exercise.

In the case of *Wendell* v. *N. Y. C. & H. R. R. R. Co.* (91 N. Y. 420) the plaintiff's intestate, a boy of seven years of age, was held to have been guilty of culpable negligence, it appearing that he was a bright, active boy, capable of understanding the peril of the situation which he recklessly encountered, resulting in his death.

In *Stone* v. *Dry Dock Railroad Company* (115 N. Y. 104) the plaintiff's intestate, a child of seven years, was run over by a street car, and in that case it was held that he could not be deemed as a matter of law to be *sui juris* so as to be chargeable with negligence, but that it presented a question for the jury.

In the *Reynolds* case (58 N. Y. 248) a bright and intelligent boy, thirteen years of age, was killed while crossing a railroad track. The summer before he had worked on a farm and received thirteen dollars a month and board for his services.

but at the time of the accident he was living at home attending school. The plaintiff was unable to show that his intestate observed that care which was required of persons crossing a railroad track, and the court having under consideration the distinction which the law makes between those who are *sui juris* and *non sui juris*, held that the plaintiff should have been nonsuited.

The fact that the boy Tucker was twelve years old, intelligent, accustomed to attend school, and assist the family by his labor, and lived near the railroad, seems to bring this case within the rule of the *Reynolds* case, indeed we see no opportunity to distinguish them.

Aside from evidence of the boy's age, no fact was adduced tending to show that he was not as well qualified to understand and appreciate the danger which overtook him as an adult. And the question is, therefore, fairly presented whether a jury can be permitted to find from such fact, standing alone, that he was *non sui juris*.

In *Nagle* v. *A. V. R. R. Co.* (88 Penn. St. 35) the court, in considering the age at which an infant should be presumed to be *sui juris*, say: "The law fixes no arbitrary period when the immunity of childhood ceases and the responsibilities of life begin. For some purposes majority is the rule. It is not so here. It would be irrational to hold that a man was responsible for his negligence at twenty-one years of age, and not responsible a day or a week prior thereto. At what age then must an infant's responsibility for negligence be presumed to commence? This question cannot be answered by referring it to a jury. That would furnish us with no rule whatever. It would give us a mere shifting standard affected by the sympathies or prejudices of the jury in each particular case. One jury would fix the period of responsibility at fourteen, another at twenty or twenty-one. This is not a question of fact for the jury; it is a question of law for the court. Nor is its solution difficult. The rights, duties and responsibilities of infants are clearly defined by the text writers as well as by numerous decisions. We have seen that the law

presumes that at fourteen years of age an infant has sufficient discretion and understanding to select a guardian and contract a marriage, is capable of harboring malice and of taking human life under circumstances that constitute the offense of murder. It, therefore, requires no strain to hold that at fourteen an infant is presumed to have sufficient capacity and understanding to be sensible of danger, and to have the power to avoid it. And this presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of fourteen years of age."

The Penal Code provides that when an infant is charged with crime, upon the prosecution rests the burden of showing that the defendant has sufficient intelligence and maturity of judgment to render him capable of harboring a criminal intent until the age of twelve years, at which time the presumption of incapacity ceases. Now, while this statute does not undertake to prescribe, and does not necessarily affect the rule to be applied in civil actions, it suggests, as asserted in the *Nagle* case, an age to which the courts can with safety limit the presumption of incapacity on the part of an infant to appreciate the perils incident to crossing railroad tracks. This presumption may, in a proper case, be so far overborne by evidence as to present a question for the jury, and then the age of the injured party may doubtless be considered by the jury in connection with the facts indicating a lack of comprehension of a dangerous situation. But in the absence of evidence tending to show that an injured infant twelve years old was not qualified to understand the danger and appreciate the necessity for observing that degree of caution in crossing a railroad track which an adult would, he must be deemed *sui juris.*

The views expressed lead to the conclusion that the judgment should be reversed.

All concur except BRADLEY and VANN, JJ., dissenting.

Judgment reversed.