JOHN W. COLLIS, as Administrator of WALTER COLLIS, Deceased, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Personal injury — contributory negligence on the part of an infant — a trespasser upon a railroad track.*

In an action brought to recover damages for the death of a boy between eight and nine years of age, caused by a railroad train, it appeared that the deceased was an active boy, familiar with the defendant's railroad tracks, and apparently had been doing some errand for the parties occupying a circus advertising car standing on a "dead" or branch track, between two passenger tracks, on the railroad company's land near a street crossing in a village, and on the other side of the street from the depot; that he started from the platform of the circus car, whence he had a view of an approaching train, and attempted to run across (but not at the street crossing) one of the passenger tracks on which an express train was approaching at a speed of thirty-five miles or more an hour, was struck by the train and killed.

The question whether the deceased was guilty of contributory negligence, within the measure of care and caution to be expected of him, was submitted to the jury as a question of fact essential to the maintenance of the action, and a verdict was rendered in favor of the defendant, the railroad company.

*Held*, that the question of contributory negligence on the part of the deceased was fairly and properly left to the jury.

The trial court charged the jury that the deceased was a trespasser upon the land of the railroad company; that there was no obligation upon the company to blow the whistle or ring the bell upon the train to notify him of its approach, as he was not upon the crossing; and that the defendant owed him

no obligation or protection except that obligation which belongs ordinarily to the business of life.

*Held,* that the charge of the court was proper.

APPEAL by the plaintiff, John W. Collis, as administrator of Walter Collis, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of Herkimer county on the 26th day of April, 1892, upon a verdict in favor of the defendant rendered at the Herkimer Circuit, and from an order denying the plaintiff's motion for a new trial made upon the minutes.

The action was brought to recover damages for the alleged negligence and the alleged wrongful act of the defendant in killing the plaintiff's intestate at the village of Herkimer on the 14th day of May, 1889.

*E. La Grange Smith* and *J. A. Steele,* for the appellant.

*C. D. Prescott,* for the respondent.

HARDIN, P. J.:

Main street in the village of Herkimer crosses the tracks of the defendant at a right angle, and defendant's passenger depot is east of Main street. Its passenger tracks 1 and 2 are separated by the depot. No. 1 on the south track goes south of the depot, and No. 2 north. West of Main street was a " dead track " or a branch track, between tracks Nos. 1 and 2, extending some 175 feet west of Main street and easterly of Washington street. At the time of the accident an advertising car or advance car of a circus company stood upon the dead track, and was occupied by persons in the employ of the circus. In one end of the car arrangements were placed for cooking, and in other parts of the car arrangements for distributing the advertising bills and for paste and other materials used in preparations to post and circulate the bills heralding the approach of the circus. The accident occurred about five twenty-five in the afternoon. As an express train was passing along track No. 2 westerly, and approaching a point opposite the circus car, the deceased, a boy some eight or nine years of age, who apparently had been doing some errand for the parties occupying the circus car, stood upon the easterly platform of the circus car, and from that point could see the

approaching train 1,000 feet or more distant; he apparently looked at it, and as the train neared the car platform on which he was standing he stepped down, and in a direction northwesterly taken by him, attempted to pass over track No. 2, which was the one occupied by the approaching express train. He failed to make his transit across track No. 2 so as to clear the approaching train, and was caught by the cowcatcher, thrown into the air and killed. Apparently the express train was approaching at a rate of speed of thirty-five or more miles an hour, there being some difference in the opinion expressed by the witnesses on the subject of speed of the train, and as to whether the engineer was endeavoring to make up lost time. The evidence in that regard was fully presented to the jury in the charge delivered by the trial judge. Apparently the deceased, after he got down from the car and started to cross the track going northwesterly, turned his head and looked to the east and immediately started on a run, and while thus endeavoring to pass across the track he was struck by the engine. He had been seen at the advertising car carrying water for the cook in the car from a point near the east end of the passenger depot. There was nothing to prevent a person from alighting from the end of the circus car and passing southerly. The defendant owned the property lying between Main and Prospect streets and was using the same for tracks and cars and in carrying forward their business. The deceased was an ordinary sized boy of his age, ordinarily intelligent and resided east of the passenger depot and south of the railroad about 100 feet from it; he was accustomed to attend school, and in doing so crossed the railroad in passing to and from his school, and he was accustomed to go over the track at other points, having been at times sent to stores to do the trading for his family on the north side of the railroad and on Main street, and when engaged in such business he was required to cross the tracks, and had been so accustomed to cross them for some two years before the accident. He had good hearing and eyesight and apparently was a quick, active, bright boy, and for various purposes he had been more or less around the passenger depot. Whether the deceased was guilty of contributory negligence was submitted to the jury as a question of fact. In doing so the court followed the doctrine laid down by ANDREWS, J., in *McGovern* v. *N. Y. C. & H. R. R. R.*

*Co.* (67 N. Y. 422). The doctrine of that case was followed in *Barry* v. *N. Y. C. & H. R. R. R. Co.* (92 N. Y. 294). The same doctrine was repeated at the close of the opinion in *Byrne* v. *N. Y. C. & H. R. R. R. Co.* (83 N. Y. 620). (*Swift* v. *The Staten Island Rapid Transit Railroad Company,* 123 id. 645.)

In *Tucker* v. *N. Y. C. & H. R. R. R. Co.* (124 N. Y. 316), it was said: " An infant of tender years is not expected to exercise the same care and caution which is required of a person of more advanced age, so that it frequently becomes a question for the jury, under proper instructions by the court, whether a child exercised that measure of care and caution which should be required and expected from it." We think the plaintiff could not complain of that branch of his case, which was submitted to the jury fairly. In considering a case where a boy was injured by an approaching train in *Wendell* v. *N. Y. C. & H. R. R. R. Co.* (91 N. Y. 428), it was said by RUGER, Ch. J., viz.: " He should not be permitted to make close calculations to determine whether he can safely pass in front of an approaching body, and when the experiment has failed, charge the consequences of his mistake upon the owner of the colliding vehicle or property. (*Belton* v. *Baxter,* 54 N. Y. 246.) " In the course of the charge the trial judge said: " It appearing that he was acquainted with the running of the cars, that he was a boy accustomed to hang around the depot there, as the testimony of Fox shows, and accustomed to get on and off his car at different times, and that he had been ordered off his car at different times, and had been ordered away from the road, tending to show, I say, that he was acquainted, although a boy, with the running and the operation of the cars, being thus acquainted, under all the circumstances, if he was guilty of carelessness, although a boy, then there can be no recovery by the administrator in this case any more than there could be by the boy himself, if he were the living party and had brought an action for an injury to his person.  *  *  *  He must come here free from fault on his part, and if he comes here charged with any fault, however remote, which caused or contributed to the injury which he complains of, he is without remedy.  *  *  *  Therefore, if you find that he was careless in the manner in which this accident happened and in the position in which he put himself in reference to

this train, your verdict will be for the defendant. * * * But if you find, under the circumstances, that the boy was not guilty of any act of negligence for which he should be charged, that caused or contributed to his injury, then the next question which would be for you to determine is, was the defendant guilty of any act of negligence on its part that caused the injury of which the plaintiff complains." Thereafter the court proceeded in its charge to consider the question relating to the alleged negligence of the defendant, and adverted to the speed of the train and to the question whether a bell was rung or a whistle was sounded, and, continuing his charge, he said: "But there was no obligation on the part of the defendant, the railroad company, to blow the whistle or ring the bell upon this train to notify the boy of its approach, for the reason that he was not upon a crossing. He was not rightfully upon the lands of the defendant, the railroad company. He was a trespasser there. He had no right to be there, and, as an adult, if he had been injured while thus of his own volition upon the lands of the defendant, the fact that he was a trespasser at the time would have prevented any recovery on his part. The boy, therefore, being a trespasser on this occasion, was entitled to no notice of the approach of the train, because no duty was owing by the defendant to him, he being there wrongfully at the time, and the defendant owed him no obligation or protection except that obligation which belongs ordinarily to the business of life. * * * Now, what obligation did the railroad company owe to this boy? He was a trespasser there, as I have stated. He had no right to be upon the railroad track, and it is recognized, not only as a common-sense proposition, but as the growth of our daily observation, that a railroad track over which a steam engine with a train of cars attached is driven with the fearful velocity that they are run, is always a place of danger, and, therefore, a place that everybody is bound by law and by a consciousness of self-preservation to protect themselves against." At the close of the charge, the counsel for the plaintiff asked for an exception in the following language: "To that part of your charge in which you say that the boy was a trespasser upon the lands of the railroad at the time he was killed." In response thereto, the court observed: "Yes; there is no evidence of any such license or consent on the part of the railroad company as justified the boy in being where he was upon

the lands of the company. The lands of the railroad company, over which their tracks pass, outside of some right that is secured to the public beyond the track, is exclusively belonging to and for the safety of the public, must be secured in the company itself." After that observation, the counsel for the plaintiff took an exception. It is now insisted in behalf of the plaintiff that the exceptions present error. The point where the intestate received injuries was no part of the public highway. It was the property of the defendant. It had a right to maintain its tracks and to operate its trains across the tracks at that point. The deceased had received no license from the defendant to enter upon that track at that point, and, therefore, the trial judge was warranted in stating that the deceased's entry upon the land at the point where he received the injuries was a trespass. The defendant had a clear right to authorize the circus car to be and remain where it was upon its property; as was said in *Nicholson* v. *The Erie Railway Company* (41 N. Y. 525), it was " placed there for a lawful purpose, and in the proper discharge of their usual and ordinary business. They had the same unqualified right which every owner of property has to do with his own as he pleases, and keep it and use it where and as he pleases, on his own ground up to the point when such use becomes a nuisance. Nicholson, the deceased, on the contrary, was not on his own ground. He was where he had no legal right to be. At most, he had a mere license to cross the defendant's track, a license implied from use, and from the fact that such use had not been expressly forbidden. But such license created no legal right and imposed no duty upon the defendant, except the general duty which every man owes to others, to do them no intentional wrong or injury." In the same case, at page 532, it was said in the course of the opinion, the intestate " has no right as against the defendant to be there. It could at any time have revoked the license and then he could not have crossed at that point without being a trespasser. The cars were lawfully upon the branch track, and the defendant had the right to have them there. The defendant owed the intestate no active duty. It owed him no duty whatever, except such as every citizen owes another. * * * It did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience. If the point where the intestate was killed had been a

public highway, or if at the time he had been a passenger in a car upon the main track, and he had been injured by collision with the cars coming down the branch track, or if in any other way he had been, not only lawfully, but in the exercise of a right at that point, the defendant would have owed him a duty." The doctrine of that case was adverted to in *McAlpin* v. *Powell* (70 N. Y. 132), and the distinction was pointed out between a case where an infant was lawfully in the highway " and a case where he is palpably invading the premises of another and is a mere trespasser. In the latter case a party is without the protection of the law except in special cases."

It is insisted that the court committed an error in saying to the jury, " there is no evidence of any such license or consent on the part of the railroad company as justified the boy in being where he was upon the lands of the company. The lands of the railroad company, over which their tracks pass, outside of some right that is secured to the public beyond the track, is exclusively belonging to, and for the safety of the public, must be secured in the company itself." After such statement by the court a general exception was taken. If some portion of the remark made by the court was proper, then the exception is unavailing. The sentence, as we find it in the appeal book, is somewhat involved, and is apparently somewhat indefinite. We think the exception does not point out clearly any error. It is insisted, in behalf of the appellant, that the court committed an error in excluding the question as to the location of the mills " along the line of the railroad on each side of it," and also in excluding an answer to the question, " How many railroad crossings are there in the village of Herkimer ? " The attention of the court was not called to any fact or circumstance indicative that an answer to the question propounded would shed any light upon the questions involved in the trial. We think the rulings made by the trial judge were not prejudicial to the plaintiff. The foregoing views lead us to sustain the verdict.

MERWIN and PARKER, JJ., concurred.

Judgment and order affirmed, with costs.