(7 Misc. Rep. 8.)

### MALSKY v. SCHUMACHER & ETTLINGER.

(Common Pleas of New York City and County, General Term.    February 5, 1894.)

1. MASTER AND SERVANT—INJURY TO INFANT SERVANT.
    When there is no proof that a cutting apparatus was a dangerous machine or out of order, and the plaintiff, an infant of about 14 years of

age, had been fully instructed as to his duties, the danger, if any, being as apparent to him as to his employer, and his fellow workmen were not proved to be incompetent, there is no question of negligence on the defendant's part to be submitted to a jury.

2. SAME—APPARENT DANGERS.

So far as the danger was obvious to him he was legally responsible for his own protection.

3. SAME—RISKS ASSUMED.

Where the accident was caused by the foreman's speaking to him, thus distracting his attention, the defendant is not liable. The risk of such distraction was one assumed by the plaintiff when he entered on his employment.

4. SAME—AGE OF INFANT.

An intelligent boy of a little less than 14 years of age is sui juris, and assumes the risks incident to the employment.

5. SAME—CONTRIBUTORY NEGLIGENCE.

In such case the plaintiff must show, not only defendant's negligence, but his freedom from it.

6. ESTOPPEL—JUDGMENT.

Where the complaint sets out the recovery of judgment in an action by plaintiff's father for loss of service by reason of the same accident, the judgment roll in the father's action is not admissible in evidence, either as an estoppel by record, or as evidence of the fact that the injury was caused by defendant's negligence. It could not be some evidence without being conclusive. If conclusive evidence, it must operate by way of estoppel, and estoppel, to be effective, must be mutual.

7. SAME—PRIVITY—ACTION FOR NEGLIGENCE.

There can be no estoppel unless there is privity of property, parties, estate, or heirship, and in an action for negligence there is no such privity. Anderson v. Railroad Co., 9 Daly, 487, substantially overruled.

(Syllabus by the Court.)

Appeal from trial term.

Action by William Malsky, an infant, by Nathan Krauskoff, his guardian ad litem, against Schumacher & Ettlinger, a corporation, to recover damages for personal injuries. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Leopold Leo, for appellant.

J. B. Talmage, for respondent.

BOOKSTAVER, J.    On Saturday, July 7, 1889, Louis Malsky, the father of the plaintiff, applied at the place of business of the defendant corporation for employment for his minor son. He asked for light work for him, and was told to bring his son the following Monday, and he would obtain employment. There was no restriction as to the kind of work which he was to do, other than that it should be light. According to the father's testimony, the plaintiff was not with him when this arrangement was made, but waited for him outside. On Monday the father took his son to the defendant's place of business, but did not go in. He was then set at work tying strings in calendars, which he continued to do until the following Thursday. Besides tying strings in calendars, he did nothing except sweeping up in the mornings. There was, on the same floor where plaintiff had been at work, an apparatus used for cutting cardboard, and at that time used for trimming the edges of the

calendars defendant was making. It consisted of a table four and
one-half feet long and three wide. On this table, about three inches
from one edge, was fastened a lever having a cutting edge, which
was operated by hand. About half past 1 on the 19th of July, the
plaintiff, then a boy within a few days of 14 years, was told by Mr.
Weber, the foreman of the room where he was working, to assist Mr.
Seagrist, the cutter at this machine, by taking away the margins
cut from the calendars the latter was trimming. He received in-
structions, both from the foreman and the cutter, how to do this
with safety, by taking away the strips while the knife was down.
Plaintiff made no objection to this work at the time. After he had
been at work for about an hour, the end of his left thumb was cut
off by the knife Seagrist was operating. His own version of how
it happened is as follows:

"I was sitting on a bench. I was to throw the clippings into a box on the
right side of me. Here was the table, and I was sitting like this, (indicating,)
a little sideways. I had to take them this way, (indicating.) I could only
take them away with my thumb; that is, I would rest my thumb on the edge
of the table, and move them towards me; pass them to my right hand. The
foreman came over to me, and asked me how I would like this. I told him
I was afraid of it, and he told me I had to work at it until he gets another
boy; and within that time my finger was cut off, just while I was talking
to him. He (the foreman) came over to me, and said to me how do I like
that work. I told him I didn't want to work at it, because there were too
many boys went away from it; and he said I would have to stay until he
gets another boy. Within that time I lost my finger."

This is absolutely all the evidence as to how the accident hap-
pened, and at the close of plaintiff's case the court, on defendant's
motion, dismissed the complaint, and we think properly.

We do not think there was any evidence of negligence on the part
of the defendant to be submitted to the jury. There is no proof
that the cutting apparatus was a dangerous machine. The only
thing like machinery about it was the counterpoise,—a simple
weight which drew up the knife after each cut, and held it there
until the operator wished to make another cut. There were no
pulleys, bands, or gearing attached to it, to get out of order. It was
operated, not by a steam or electric power, but by hand. Its
method of operation was simple and obvious. The knife went down
slowly, and in full view of the plaintiff. In fact, the apparatus was
little more of a machine than a carving knife or a handsaw, and was
just as much under the control of the operator as either of them,
and about as dangerous to others as these instruments. There is
no proof that the foreman, Weber, or the cutter, Seagrist, were not
fully competent to perform their respective duties, or that the ap-
paratus was out of order, or worked irregularly or unexpectedly.
Respondent was not an insurer of its employes, and was not required
to guard against unforeseen accidents. It was not necessary that
defendant or its servants should warn plaintiff that the knife would
cut if he put his finger under it, for that was as apparent to him as
to them, and in fact he says he knew this. Whatever there was of
danger or risk he, a bright boy of nearly 14 years, could see and
appreciate as well as an adult, (Tucker v. Railroad Co., 124 N. Y. 317,.

26 N. E. 916, citing, among other cases, Nagle v. Railroad Co., 88 Pa. St. 35;) and, as far as the danger was known and obvious to him, he was as legally responsible for his own protection as a person of full age, (Hickey v. Taaffe, 105 N. Y. 26, 12 N. E. 286; McCarragher v. Rogers, 120 N. Y. 526, 24 N. E. 812.)    There is no proof whatever that Seagrist, the cutter, saw the dangerous position of plaintiff's thumb in time to avoid the accident; and if he had, and did not, it would have been the carelessness of a fellow workman, and would not have made the defendant liable, such carelessness being one of the risks every employe assumes when he enters upon any business or employment.

It is manifest, however, that the accident occurred, not by reason of any defect in the machinery, or of Seagrist's carelessness, but because the foreman, Weber, by speaking to plaintiff, distracted his attention from his work.    But we do not think this fact renders the defendant liable.    The foreman was not the alter ego of the master, and did not stand in its place for any such purpose.    It is clear the inquiry was personal to the foreman, and made because he was interested in the lad.    He was acting within his own directions.    The risk of such distraction, if any, was one the plaintiff assumed when he entered upon the employment.    Loughlin v. State, 105 N. Y. 159, 11 N. E. 371; Butterworth v. Clarkson, (Super. N. Y.) 22 N. Y. Supp. 714; Crispin v. Babbitt, 81 N. Y. 516.    But, even if the foreman had been the master for such purpose, the plaintiff absolutely failed to show how the accident happened by reason of the foreman's speaking.    It is not claimed that he spoke suddenly, or in a loud or threatening manner, so as to startle him; on the other hand, the inquiry itself was a friendly one.    Besides, it was his own act in keeping at work while talking, and not stopping, as he should have done.    If a master is to be held liable merely because its superintendent or other representative speaks to an employe, no direction, however urgent, could be given to a servant, without first asking him to stop work; but even asking him to do this might distract his attention, and thus make the master liable.

Appellant contends that the refusal of the foreman to permit the plaintiff to stop work at once upon his saying he "was afraid, and didn't like to work on it," rendered the defendant liable, and that he was acting out of a constrained acquiescence in the master's requirements.    As before stated, we do not think the foreman was acting for the master in making the inquiry and refusing the request, but within his own discretion.    But, if he were acting for the master, it is impossible for us to understand how this refusal caused the injury, as the refusal and the accident were, according to plaintiff's testimony, coincident.    Suppose the foreman had said, "Well, my lad, if you do not like the work, you may stop at once, and go back to stringing calendars," instead of what he did say; is there the least probability that the accident would not have happened? The one expression would have taken as long a time to utter as the other, and, while in the act of refusing, the accident happened.    It would appear, therefore, that neither the refusal nor the supposed restraint had anything to do with it.    The foreman himself would

not have been liable under such circumstances. It was no more than the expression of his intention. But an intention not carried out is no more ground for a cause of action than a direction not acted on. Therefore, we think there was no question of negligence on defendant's part to be submitted to the jury. On the other hand, there is no evidence that plaintiff was free from contributory negligence, and considerable evidence that he was not. The plaintiff was sui juris at the time he was injured, (see authorities first cited,) and knew as well as the foreman and the cutter the danger, if any there was; yet he worked for an hour without complaining of it, instead of stopping work as he should. Even when addressed by the foreman he did not stop work, or look where he was putting his hand. He had no occasion to put it, or any part of it, under or over the knife, which was in plain sight. An employe, in accepting and continuing in service with a knowledge of the character and position of machinery, the danger of which is apparent, and from which he may be liable to receive injuries, assumes the risk incident to the employment; and the fact that he is a minor does not relieve him from this rule, only the risk assumed must be measured by the care proper to his age and condition. See authorities above cited, and Schmidt v. Cook, (Com. Pl. N. Y.) 23 N. Y. Supp. 799; Oszkoscil v. Pencil Co., 6 N. Y. Supp. 501; Buckley v. Manufacturing Co., 113 N. Y. 540, 21 N. E. 717. From all the evidence in the case we do not understand why it was necessary for the plaintiff, who was right-handed, to use the left in any way to remove the clippings, or why he could not have done all that was required of him by one motion of his right hand and arm. On a case like this, the plaintiff must show, not only negligence on the part of the defendant, but that he was free from it; and the burden of both is upon him. Wiwirowski v. Railway Co., 124 N. Y. 425, 26 N. E. 1023; Weston v. City of Troy, (N. Y. App.) 34 N. E. 780.

The complaint in this action sets out the recovery of judgment in an action by plaintiff's father for loss of service by reason of the accident here complained of, which was not denied by the answer. Upon the trial he offered the judgment roll in the father's action "as an estoppel by record." The court excluded it, and the plaintiff excepted. He then offered the roll "as some evidence of the fact that the injury was caused solely by reason of the negligence of the defendant." The court again excluded it, and the plaintiff excepted. We think both rulings were correct. The judgment in favor of the father could not be "some evidence of negligence" unless it were conclusive evidence. If it were conclusive evidence, it operated by way of estoppel, and estoppel, to be effectual, must be mutual. Booth v. Powers, 56 N. Y. 33; Collins v. Hydorn, 135 N. Y. 320, 323, 325, 32 N. E. 69. The case last cited holds that a judgment against a party in his representative capacity as an assignee for the benefit of creditors does not include him in an action brought in his individual capacity, although the same questions are involved in both actions; and in Rathbone v. Hooney, 58 N. Y. 467, it was held that a judgment against a party sued as an individual is not an estoppel in a subsequent action for the same cause, in

which he sues, or is sued, in another capacity or character,—citing many authorities. The same point substantially, was decided in Landon v. Townshend, 112 N. Y. 93, 19 N. E. 424. There can be no estoppel unless there is privity of property, parties, estate, or heirship between the plaintiff and his father as to this cause of action. Bigelow, Estop. (5th Ed.) 130, 131; Wells, Res Adj. § 21; Collins v. Hydorn, supra; Neeson v. City of Troy, 29 Hun, 173; Groth v. Washburn, 39 Hun, 324. Here there was no such privity. The father sued for the loss he claimed to have sustained, while in this action the son seeks to recover for himself the damages he claims to have sustained. Anderson v. Railroad Co., 9 Daly, 487, was decided on a motion to strike out part of a complaint, and can be regarded as an authority on that subject only; and, in the light of the authorities above cited, it may well be doubted whether it can be regarded as controlling, even on the question then under consideration. The judgment should therefore be affirmed, with costs. All concur.