JOHN BURK, as Administrator, etc., of EDWARD BURK, Deceased, Appellant, *v.* THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Respondent.

*Negligence — not presumed — when a question of fact — duty of a railroad company at a private crossing.*

In an action brought to recover damages for injuries resulting in the death of the plaintiff's intestate by reason of the alleged negligence of the defendant, caused by the intestate's being run over by a train on the defendant's railroad, the plaintiff must show that the defendant failed in the performance of some duty which it owed to his intestate at the time the injury was inflicted, and that such failure caused or contributed to the injury.

Where the plaintiff sets forth the negligence of the defendant as the cause of the injury, he assumes the burden of establishing by proof the fact or facts establishing such negligence, and these requirements are not met or established by proof of the accident alone or by any presumption which can be drawn from it.

To maintain such an action the plaintiff must show that the death of his intestate was caused solely by the negligence of the defendant, and this must be shown by competent proof and not left to mere speculation.

Negligence is a question of fact and should usually be decided as such, especially when men of ordinary prudence and discretion might differ as to the character of the act under the circumstances of the case, the positions and the conditions of the parties.

A railroad company at a private crossing is not required to give any warning of the approach of its trains, and the only duty it owes its licensee at such crossing is to do him no intentional wrong or injury.

APPEAL by the plaintiff, John Burk, as administrator, etc., of Edward Burk, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 5th day of September, 1894, upon the decision of the court rendered after a trial at the Saratoga Circuit before the court without a jury dismissing the plaintiff's complaint upon the merits.

*E. T. Brackett* and *T. F. Hamilton,* for the appellant.

*Lewis E. Carr,* for the respondent.

MAYHAM, P. J.:

The plaintiff prosecuted this action as administrator to recover for the alleged negligence of the defendant in the management of its

railroad train, by which the plaintiff's intestate was killed. The case discloses that the defendant is a railroad corporation, and that in 1834 it acquired a right of way for its railroad, the line of which has not since that time been changed, over and upon which it has since owned and operated a railroad. That in 1871 the grandfather of the intestate, with whom the intestate resided, purchased a piece of land adjacent to such railroad land and adjoining it on the east, on which he built a house in which he and his family since 1872 have resided. That such house stood near the lands of the railroad, and that the persons residing in such house had from the time of the erection thereof been in the habit of crossing over the defendant's railroad lands and track from the house to the highway on the opposite side of the railroad, and which ran at that point about parallel with the line of the railroad, and that that was the only or usual way of egress from, and ingress to, the house from such highway. At the time of the accident, and for some time previous thereto, the plaintiff's intestate had resided in the house as a member of his grandfather's family, and as such was accustomed to pass over and across this railroad track to and from such house.

On the day of the injury which resulted in intestate's death, he started for school, and while attempting to cross the defendant's railroad he was struck by a train backing down on this track and killed. He was at the time about six years old, but no claim is made that he was *non sui juris* at the time of the injury.

When the train struck intestate it was moving at the rate of about fifteen miles an hour, and no bell was rung or whistle blown to give warning of the moving of the train. There is no proof in the case that this was an unusual rate of speed for the train at that point, or that there was any custom on the part of the defendant to give any warning or signal of the approach of the train at that point. The plaintiff in this action, to entitle him to recover, must show that the defendant has failed in the performance of some duty which it owed the intestate at the time the injury was inflicted, and that such failure caused or contributed to the injury.

The plaintiff having alleged the negligence of the defendant as the cause of the injury, assumed the burden of establishing by proof the fact or facts establishing such negligence. (*Heinemann* v. *Heard*, 62 N. Y. 455 ; *Lamb et al.* v. *Camden & Amboy Railroad & T. Co.*, 46 id. 271–279.)

These requirements are not met or established by proof of the
accident alone, or by any presumption which can be drawn from it.

The negligence cannot be presumed by reasoning from the effect
back to some supposed cause, but a cause arising in some failure of
duty on the part of the defendant must be shown which produced
the injurious effect complained of.

In *Cordell* v. *N. Y. C. & H. R. R. R. Co.* (75 N. Y. 332) EARL,
J., says: "To maintain this action the plaintiff must show that the
death of the intestate was caused solely by the negligence of the
defendant, and this she must show by competent proof. It must not
be left to mere speculation." This rule has been so long and uni-
versally accepted as the true one in this class of cases that it may
be regarded as elementary, and the appellant, in the arguments
in support of this appeal, seems to concede its application to this
case.

But the appellant insists that he has complied with the require-
ments of this rule by proving the omission on the part of the
defendant to ring a bell or blow a whistle when approaching the
Burk house. It is quite clear from all the evidence in this case that
this was at most only a private way over the defendant's railroad,
for the use of the occupants of the Burk house, arising from a user
or implied license; but it is insisted that that is enough to bring the
case within the rule laid down in *Barry* v. *N. Y. C. & H. R. R.
R. Co.* (92 N. Y. 292). But that case discloses that the *public* was
in the habit of crossing the track at the point where the injury
occurred, and had been for more than thirty years, and that several
hundreds crossed there daily. The only real analogy between that
case and the one at bar is that there was an unrevoked license of
the defendant to cross its track in either case, but in the one case
it was a license to the public, which gave it the characteristics of a
public crossing, while in the other case it was in the nature of a
private license to be used only in connection with the Burk
dwelling.

This distinction was one which clearly imposed a different obliga-
tion upon the defendants in these cases, and the case relied upon
recognizes the difference in the obligation of a railroad company
towards the public, who are permitted to cross its tracks by suffer-

ance, and one who by sufferance is casually thereon. (*Barry* v. *R. R. Co., supra*.)

In *Byrne* v. *N. Y. C. & H. R. R. R. Co.* (104 N. Y. 362) the public had notoriously and constantly been in the habit of crossing the defendant's track, and it was held that that fact imposed upon the defendant a duty to exercise reasonable care in running its trains so as to protect persons crossing from injury.

These cases can be clearly distinguished from the one at bar in this, that the former by their use had become or were public crossings, while the case at bar is at most but a private crossing, and it is insisted by the respondent that this difference creates different obligations on the part of the defendant from that which the law imposes at a public crossing; that in case of a public crossing the law imposes upon a railroad company the exercise of active vigilance in the protection of the public from the dangerous agencies which it has created, while in case of a private crossing by a licensee the license to cross imposed no duty upon the railroad company, except to do him no intentional harm or wanton injury. In *Matze* v. *N. Y. C. & H. R. R. R. Co.* (1 Hun, 417) it was held by the General Term, sitting in this department, that "even if there was any evidence from which a license might be inferred, and the plaintiff was not a trespasser, such license created no legal right and imposed no duty upon the defendant, except the general duty which every man owes to others, to do them no intentional wrong or injury." And MILLER, J., in another part of the same opinion, uses this language: "I do not understand that they owe any duty, even to the owner of a private right of way through which they pass, which calls upon them to exercise care in the running of their trains." This doctrine was approved and the language of MILLER, J., quoted with approbation by HARDIN, P. J., in *Cornell* v. *Skaneateles R. R. Co.* (40 N. Y. St. Repr. 2, 3), which was an action against the defendant for injuring the plaintiff's horse, which was crossing the defendant's track at a private crossing. In *Nicholson* v. *Erie Railway Co.* (41 N. Y. 525) the court, in discussing this question, uses the following language: "Nicholson, the deceased, * * * was not on his own ground. He was where he had no legal right to be. At most he had a mere license to cross the defendant's track, a license implied from use, and from the fact that such use had not been expressly forbidden.

But such license created no legal right, and imposed no duty upon the defendant, except the general duty which every man owes to others, to do them no intentional wrong or injury."

This same doctrine is repeated and enforced in *Collis* v. *N. Y. C. & H. R. R. R. Co.* (71 Hun, 509).

I think it must now be held to be the settled law of this State that a railroad company at a private crossing is not required to give any warning of the approach of its train, and that the only duty it owes the licensee at that crossing is to do him no intentional wrong or injury. Applying that rule to the case at bar upon the evidence as it stands, we see no ground upon which the plaintiff could legally recover in this case.

But if we are wrong in this conclusion still this court on appeal could not properly reverse this judgment, as the learned trial judge was, by the submission of the case to him without a jury, called upon to determine facts as well as the law.

" Negligence is a question of fact and should usually be decided as such, especially *whenever men of ordinary prudence and discretion might differ as to the character of the act* under the circumstances of the case, the positions and conditions of the parties." ( *Wendell* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 427; *Morrison* v. *Erie Ry. Co.*, 56 id. 308.)

Applying the rule above quoted, the question of negligence became one for the judge acting as, and for, the jury. It is clear that the question of negligence in this case was one about which men of ordinary discretion might differ, as we find here the learned judge and counsel for appellant differing on that vital question.

Under the circumstances of this case the finding of the judge upon that question cannot be disturbed on this appeal.

The judgment should be affirmed, with costs.

PUTNAM and HERRICK, JJ., concurred.

Judgment affirmed, with costs.